# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MONICA PEREZ PEREZ and JOSE MANUEL CARABALLO NEGRÓN personally and in representation of their minor son AMCP<br><br>Plaintiffs<br><br>vs.<br><br>HOSPITAL EPISCOPAL SAN LUCAS, INC., or alternatively, JOHN DOE CORPORATION d/b/a HOSPITAL EPISCOPAL SAN LUCAS-PONCE; DR. MARYROSE CONCEPCION GIRON and her husband RICHARD DOE, each of them personally and in representation of their conjugal partnership; JOHN DOES 1, 2 and 3; A, B and C CORPORATIONS; UNKNOWN INSURANCE COMPANIES A through C<br><br>Defendants | CIVIL NO.: 18-<br><br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Mónica Pérez Pérez and José Manuel Caraballo Negrón personally and in representation of their minor son AMCP, through their undersigned attorneys, and very respectfully state and pray as follows:

### JURISDICTION AND VENUE

1. The events or omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2. Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code. Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

**PARTIES**

4. Plaintiffs Mónica Pérez García ("Mrs. Pérez) and José Manuel Caraballo Negrón ("Mr. Caraballo") are citizens and residents of the State of Florida, and appear herein personally and as parents and legal representatives of their minor son, plaintiff AMCP, also a Florida citizen and resident.

5. Defendant Hospital Episcopal San Lucas, Inc., or, alternatively, John Doe Corporation d/b/a Hospital Episcopal San Lucas (hereinafter "Hospital San Lucas") is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico which has its principal place of business in Puerto Rico. At the time of the events in this case Hospital San Lucas was the owner and/or operator of a hospital of the same name, located in Ponce, Puerto Rico.

6. Defendant doctor Maryrose Concepción Girón ("Dr. Concepción") is a medical doctor, married to codefendant Richard Doe and together with him constituting a conjugal partnership, who provided medical treatment to Mrs. Pérez and her minor son AMCP. Dr. Concepción and her husband are domiciled in Puerto Rico, where they reside. At all times relevant to this claim Dr. Concepción was employed at and/or was a physician with privileges of Hospital San Lucas.

7. All of the other defendants are also citizens and residents of the Commonwealth of Puerto Rico or of states other than Florida. John Does 1, 2, and 3 and A, B, C Corporations are persons and/or corporations, whose identities are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed herein.

8. Unknown Insurance Companies A through C, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

## FACTS OF THE CASE

9. On September 16, 2014 Mrs. Pérez began her prenatal care with Dr. Concepción.  At the time she was 31 years old and had a medical history of a vaginal delivery at 34 weeks of a seven pounds and four ounce baby.

10. During her prenatal care, Mrs. Pérez did not present any risk factors or abnormalities.

11. Her last prenatal visit was on April 29, 2015 at $40^{5}/_{7}$ weeks gestation. The total weight gain was 29 pounds.  No fundal height measurements were documented during the prenatal visits with Dr. Concepción.

12. On April 29, 2015 at approximately at 8:24 p.m. Mrs. Pérez arrived to Hospital San Lucas for an induction of labor, as per Dr. Concepción's instructions. At the time of the admission to the Labor and Delivery suite she suffered severe back and pelvic pain. Her pelvic examination revealed:  cervix 3-4 cm dilated and 60% effaced.

13. The vertex was un-engaged and floating at the minus 3 station.  The fetal heart was documented at 140 bpm.  No estimated fetal weight was documented.

14. Mrs. Pérez was induced with Cytotec and later augmented with Pitocin.

15. The progress in labor was as follows:

| 4.29.15 | Cervix | Effacement | Station |
|---|---|---|---|
| 9:45 pm | 4 cm | 60% | - 3 |
| 11:50 pm | 5 cm | 60% | - 3 |
| 4.30.15 | | | |
| 1:42 am | 6 cm | 80% | 0 |
| 2:34 am | 71/2 cm | 90% | +1/2 |
| 3:30 am | 10 cm | 100% | +2 1/2 |

16. Mrs. Pérez gave birth via a spontaneous vaginal delivery on April 30, 2015 at approximately 3:38 a.m. She suffered a fourth grade perineal laceration due to a midline episiotomy performed by Dr. Concepción. Baby AMPC weighed, 8 pounds with 7.1 ounces,

measured 21 inches, with a head circumference of 13 inches and Apgar score of 7-9.

17. The standard of care recognizes that the induction of labor is contraindicated any time that spontaneous labor and delivery would be more dangerous for the mother or fetus than abdominal delivery.  Such a condition is a floating presenting part.

18. At the time of Mónica Pérez García's admission to the hospital for the induction of labor, the fetal head was floating and unengaged at the minus three station. The fetus was larger than the first baby.  The larger fetus and the failure of the head to enter the pelvic inlet were a red flag for the disproportion between the fetus and the maternal bony pelvis that was demonstrated by the subsequent shoulder dystocia at birth and the resulting Erb's Palsy.

19. Dr. Maryrose Concepción Girón described the delivery as follows:

> The "Turtle Sign" was noted following the delivery of the fetal head.  Initial gentle traction failed to deliver the shoulders. Maneuvers used for shoulder delivery included:
>
> McRoberts, suprapubic pressure, and delivery of the posterior arm.          .
>
> Male infant with broad shoulders was noted.  Weight 8lbs. 7 oz, Apgar 7-8.   There was no palpable clavicle or humerus fracture.

20. In the Newborn Nursery examination of the baby revealed the following at 6:43 am on May 1, 2015:

> "Left Arm – No spontaneous movements.  Arm is flacid without tone – weak palpable pulses (brachial and radial).
>
> Baby girl (sic) was large for gestational age which is a risk factor for the current condition.  Referral to a neurologist would be appropriate. "

21. Dr. Concepción and Hospital San Lucas' medical staff departed from the standard of care by inducing the labor in Mónica Pérez García's when the fetal head was

floating above the pelvic inlet.

22. The standard of care recognizes that once a shoulder dystocia is recognized, no further traction is to be applied to the head and neck of the baby until the trapped shoulder is freed.

23. The presence of a "Turtle Sign" at the time of the delivery of the baby's head was a classic sign of the presence of a shoulder dystocia. The "Turtle Sign" occurs when the baby's head delivers and then retracts rearward toward the vaginal opening.

24. The application of even "gentle traction" results in stretching and tearing of the brachial plexus when the shoulder is held immobile.

25. The failure of Dr. Concepción and the hospital staff to delay applying traction on the baby's head until after the trapped shoulder was freed was the direct and proximate cause of the avoidable permanent brachial plexus injury suffered by baby AMCP.

26. The failure of the Labor and Delivery nurses to apply both the McRoberts' maneuver and suprapubic pressure simultaneously after the turtle sign was noticed and the shoulder dystocia was recognized was also a departure from the standard of care.

27. The standard of care requires that once a shoulder dystocia is recognized at the time of a vaginal delivery the labor nurses are to apply both the McRoberts' maneuver and the suprapubic pressure to attempt to free the trapped anterior shoulder.

28. On May 20, 2015 baby AMCP was diagnosed with Erb's Palsy.

29. Following his release from Hospital San Lucas AMCP has undergone repeated medical evaluations and treatment for his condition. He will require continuing medical care for his condition in the foreseeable future and surgery may be necessary. Moreover, as a result of his traumatic birth and related injuries, the possibility of his having sustained as yet undiagnosed neurological and/or other serious damages cannot be ruled out.

30. AMCP's condition was caused by the defendants' negligence, all of whom

departed from the medical standards of care and otherwise failed to act in a prudent, reasonable or responsible manner in the medical care provided to Mrs. Pérez and her baby, and in fact caused the child's present and future condition.

31.     More specifically, the defendants' departures from the medical standards and/or professional negligence include, but are not limited to: failure to recognize that Mrs. Pérez was not a suitable candidate for an induction of labor, failure to recognize that applying traction to the fetal head and neck after the shoulder dystocia was recognized would result in a permanent brachial plexus injury in the baby and failure of the labor and delivery nurses to apply both the McRoberts' maneuver and suprapubic pressure simultaneously after the turtle sign was noticed and the shoulder dystocia was recognized. The failure of defendants to recognize that the induction of labor was contraindicated in this case resulted in the induction of labor, the shoulder dystocia and the left Erb's Palsy. The failure of the labor and delivery nurses to apply both McRoberts' maneuver and suprapubic pressure resulted in the failure to free the trapped shoulder before Dr. Concepción resorted to persistent traction on the baby's head and neck; the same traction that resulted in the brachial plexus injury.

32.     As a result of the birth injuries he sustained, AMCP is a permanently injured child who will not have a normal life and will require continuing care for his condition. Moreover, as a result of his permanent disability AMCP's potential to generate future income has been adversely affected.  AMCP's damages are reasonably estimated at a sum in excess of $3,000,000, including pain and suffering, future expenses and the loss of potential to generate future income.

33.     Because his parents have limited economic resources, AMCP has been unable to receive sufficient quality professional care or therapy to help him deal with his physical and emotional conditions.

34.     Plaintiffs Mónica Pérez Pérez and José Manuel Caraballo Negrón have

suffered severe emotional and economic damages as a consequence of defendants' negligence and their son's damages. The life changing incident described above has taken a heavy toll on this young family and their relationship. Their damages are reasonably estimated at a sum of in excess of $1,500,000 each.

35. The permanent condition of their son and his consequential physical and emotional damages, as well as the emotional damages suffered by Mrs. Pérez and Mr. Caraballo were caused by defendants' negligent management of Mrs. Pérez delivery. Defendants' departures from the medical standards of care and failure to act in a prudent reasonable or responsible manner in the medical care provided to Mrs. Pérez and baby AMCP in fact caused the traumatic outcome outlined above.

## COUNT I

### (MEDICAL MALPRACTICE – 31 L.P.R.A. §5141, 5142)

36. Paragraphs 1 through 35 of this complaint are incorporated by reference as if fully set forth herein.

37. Hospital San Lucas, Dr. Concepción and the Doe Defendants had a duty to provide medical care to Mrs. Pérez and baby AMCP that complied with the applicable standards of the medical profession. Notwithstanding, Hospital San Lucas, Dr. Concepción and the Doe Defendants breached that duty as set forth above.

38. There is a clear and direct causal relationship between the medical malpractice and/or negligence of Hospital San Lucas, Dr. Concepción and the Doe Defendants and the damages sustained by plaintiffs, as set forth above.

39. Pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA §5141, defendants are liable to plaintiffs for all damages caused by their negligent acts or omissions.

40. Pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA §5142, Hospital San Lucas is vicariously liable for the negligent acts or omissions incurred by the

other defendants herein, including Dr. Concepción, and by its medical and nursing staff in the treatment provided to Mrs. Pérez and baby AMCP, as a result of the negligence incurred by said parties as well as for its own negligence in the selection, monitoring, supervision and granting of privileges to said doctors and nurses, including Dr. Concepción.

## COUNT II
### (DIRECT ACTION AGAINST INSURERS - 26 L.P.R.A. §2003)

41. Paragraphs 1 through 40 of this complaint are incorporated by reference as if fully set forth herein.

42. Defendants Unknown Insurance Companies A through C have a contractual obligation to compensate those who are damaged by the medical errors and omissions of the defendants. As set forth in Count I above, those defendants committed medical malpractice and/or negligence with respect to AMCP and his mother. Moreover, there is a clear and direct causal relationship between this misconduct and the damages sustained by plaintiffs, as set forth above.

43. Under 26 L.P.R.A. §2003, plaintiffs have a right to reclaim directly against the corresponding insurers of the defendants.

## COUNT III
### (SPECIAL DAMAGES)

44. Paragraphs 1 through 35 of this complaint are incorporated by reference as if fully set forth herein.

45. Pursuant to 32 L.P.R.A. §5141 and 5142, defendants also have the obligation to compensate plaintiff AMCP for all the medical expenses required for his past, present and future treatment to repair and/or to mitigate the damages that were caused by their negligent medical care, as well as for his diminished potential to generate future income. These damages are reasonably estimated at a sum in excess of $2,000,000.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs respectfully request that the Court enter final judgment

against defendants:

(a) Declaring defendants to be in violation of 32 L.P.R.A. §5141, 5142 and 26 L.P.R.A. §2003, as alleged hereinabove.

(b) Finding defendants jointly and severally liable to plaintiffs for the economic and non-economic damages sustained by Mrs. Pérez, Mr. Caraballo and their minor son AMCP plus applicable interest and costs of litigation.

(c) Awarding plaintiffs such other and further relief at law or in equity as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury in the complaint set forth above.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of January 2018.

s/David Efron
**DAVID EFRON**
USDC-PR 125701
**LAW OFFICES DAVID EFRON, PC**
*Attorneys for Plaintiffs*
PO Box 29314
San Juan, PR 00929-0314
Tel. (787) 753-6455
Fax (787) 758-5515
efron@davidefronlaw.com