# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MONICA PEREZ-PEREZ, ET AL.,**<br>    Plaintiffs,<br><br>           v.<br><br>**HOSP. EPISCOPAL**<br>**SAN LUCAS, INC., ET AL.,**<br>    Defendants. | **CIV. NO.** 18-1014 (JAG-MDM) |

## REPORT AND RECOMMENDATION

Pending before the Court is the factual question of whether co-defendant Dr. Maryrose Concepción-Girón ("Dr. Concepción") was a member of the teaching faculty of the Hospital Episcopal San Lucas, Inc., at the time of the acts alleged in the complaint (the "Complaint"). (*See*, Docket No. 1). The answer to such question is crucial to determine whether Dr. Concepción is covered by the statutory cap on damages available under Puerto Rico Law No. 136 of July 27, 2006. *See,* P.R. Law Ann. tit. 24 § 10035 (the "RAMC Act").[1] For the reasons explained below, the Court answers this question in the affirmative.

---

[1] The applicability of the statutory cap is a matter of law. The RAMC Act created the Regional Academic Medical Centers ("RAMC") with the purpose of promoting and strengthening educational health programs in Puerto Rico. tit. 24, § 10031 *et seq*. To this end, the statute extended to covered institutions the liability caps previously conferred by the "Claims against the Commonwealth Act," P.R. Laws Ann. tit. 32, § 3077 (1955), to government employed physicians for alleged acts of malpractice. *See, Cedeño v. Sur Med Med. Ctr.,* 977 F. Supp. 2d 115, 117 (D.P.R. 2013). The statute provides, in pertinent part:

> The limitations imposed in [P.R. Laws Ann. tit. 32, § 3077], shall be extended to the Regional Academic Medical Centers, the students, doctors in graduate training and the *faculty members* of the latter, for the medical procedures practiced in said Centers in the exercise of their [teaching duties.] Said limitation establishes a maximum of seventy-five thousand dollars ($75,000) for damages suffered by a person and up to one hundred fifty thousand dollars ($150,000) when the damages were suffered by more than one (1) person or when there are several causes [of] action to which a single prejudiced party is entitled.

## I. Background

In the present case, it has been stipulated by the parties, and settled by the Court, that the Puerto Rico Supreme Court's decision in the certified question of *Delca I. Ortiz Santiago v. Hospital Episcopal San Lucas, Inc.* (Civil No. 16-1099 (ADC)), 2018 WL 4007086 (*see,* Docket No. 156), resolved that co-defendant Hospital Episcopal San Lucas, Inc., ("Hospital") is indeed a teaching hospital for purposes of the applicability of the statutory cap on damages under the RAMC Act. Pursuant to the RAMC Act, the cap sets limits on a plaintiffs' recovery in medical malpractice cases like this one if the plaintiffs prevail on the merits of their claims.

Turning now to the issue at hand. This matter was referred to the undersigned with instructions to hold an evidentiary hearing to determine the factual question of whether Dr. Concepción was a member of the teaching faculty of the Ponce School of Medicine when she offered medical services to Mónica Pérez García while she was a patient of the Hospital expecting to give birth. (*See,* Docket No. 93). The parties agreed to the hearing and time was granted to the parties to exchange their evidence on the subject prior to the hearing.

The Court therefore held an evidentiary hearing on May 26, 2022. Dr. Concepción appeared in person for the hearing as a party to the proceeding. The Defendants submitted documentary evidence[2] and presented witness testimony to establish Dr. Concepción's position as a voluntary faculty member who offers her medical services at the Hospital in the exercise of her teaching duties. The Court heard testimony from three witnesses over the course of approximately seven hours, namely, Dr. María de los Angeles Valentín, the current Director of the Graduate Program of Medical Education at the Hospital, and a faculty member of the Internal Medicine Residency Program at the Hospital; Dr. Francisco Colón Rivera, a voluntary

---

The stipulations in the third paragraph of [P.R. Laws Ann. tit. 26 § 4105] shall also be extended to the consortium.

P.R. Laws Ann. tit. 24, § 10035.

[2] The defendants' Exhibits A, B, C, D, E, E1, E-2, E-3, E-4, E-5, and E-6 were presented and admitted into evidence.

member of the teaching faculty at the Hospital; and co-defendant Dr. Concepción, a medical doctor with a specialty in Obstetrics and Gynecology ("Ob-Gyn") and a purported voluntary faculty member at the Hospital. For their part, the Plaintiffs did not submit any evidence, either documentary or testimonial, to support their position that Dr. Concepción was *not* a member of the teaching faculty at the Hospital during the relevant period alleged in the Complaint. After the defendants' concluded their presentation of the evidence, the Court heard final arguments from the parties.

## II. Discussion

The evidence presented by the defendants during the evidentiary hearing, which was *not* controverted by the Plaintiffs, can be summarized as follows:

### A. Dr. María de los Ángeles Valentín

Dr. María de los Ángeles Valentín ("Dr. Valentín") is the current Director of the Graduate Program of Medical Education at the Hospital. She has held that position since 2017. She also currently serves as the Hospital's "Designated Institutional Official." As part of her duties as Director of the Graduate Program of Medical Education, Dr. Valentín oversees the Medical Residency Program at the Hospital.

In her testimony, Dr. Valentín explained that the Hospital is one of the primary teaching hospitals affiliated with the Ponce School of Medicine (hereinafter to be referred to also as the "University"). She testified that it is through an "Affiliation Agreement," which was admitted as **Exhibit A**,[3] between the Hospital and the University that this special relationship between the two entities is memorialized. She stated that, without the Affiliation Agreement, it would be impossible to maintain graduate medical programs in Puerto Rico. In her opinion, the loss of the graduate medical programs would create a public health crisis in Puerto Rico. According to Dr. Valentín, the Affiliation Agreement is also what cements the legal protections afforded to the Hospital under the RAMC Act.

---

[3] All Exhibits are found at Docket No. 100.

Dr. Valentín also testified as to the different contractual relationships that a physician might have with the Hospital as a faculty member. She explained that a physician may be contracted as a faculty member either by way of "core faculty," "core faculty by sub-specialty," or "voluntary faculty." Dr. Valentín explained that the difference between these positions, is that a "core faculty" member is the principal faculty member responsible for the education of each resident. That faculty member manages the evaluations, the preparation, and the investigations for each of their residents and makes sure that each resident complies fully with his/her required milestones.

A "voluntary faculty" member, on the other hand, has other duties and responsibilities, such as, assisting and evaluating the patients that need treatment, together with the residents, in a teaching capacity so that the residents can obtain proper training, treat the required number of patients to meet their required milestones, complete their academic process, and obtain the clinical experience they need to graduate.

Dr. Valentín explained that for the physicians at the Hospital to become members of the teaching faculty, and thus be eligible for coverage under the statutory cap on damages, they must have an academic appointment from an accredited medical school. Dr. Valentín testified that her role with the faculty at the Hospital is to assist the residents and physicians to obtain their credentials, to ensure that they are duly accredited to act as medical doctors, that they are part of the University's faculty, that they have an academic appointment from the University, that they comply with the required regulations, and that they provide proper instruction to the students with excellency and integrity, and are committed to academic training. Dr. Valentín testified that she is familiar with all the doctors in the faculty program at the Hospital. When asked specifically about Dr. Concepción, Dr. Valentín said she knows her because Dr. Concepción is part of the "Ob-Gyn" faculty and is a voluntary faculty member at the Hospital.

Dr. Valentín testified further that Dr. Concepción has an academic appointment from the Ponce School of Medicine and has been a member in good standing of the University's faculty for over ten years. She then discussed Defendant's **Exhibit B** (Docket No. 100-2 at 2), identified as the "Certification for Dr. Maryrose Concepción." The certification was prepared by the University and is dated September 14, 2006. *Id*. It states that the University granted Dr. Concepción an appointment in the position of "Clinical Instructor" in the "Ob-Gyn" Department. *Id*. The document further states that the appointment is effective as of September 1, 2006. *Id*. The appointment is signed by the (then) President and Dean of the Ponce School of Medicine, Luisa I. Alvarado, M.D. *Id*. Dr. Valentín explained that the document means that Dr. Concepción is part of the voluntary faculty of the Residency Program of the Hospital and certifies that she actively participates in the teaching of residents-in-training and medical students in the "Ob-Gyn" Residency Program at the Hospital as part of the consortium agreement with the Ponce School of Medicine. *Id*. Dr. Valentín also confirmed that **Exhibit B** certifies that Dr. Concepción has been a member of the medical faculty of the Ponce School of Medicine since September 1, 2006, and "grant[s] [her] appointment to the position of Clinical Instructor in the Ob-Gyn Department." *Id*.

Dr. Valentín was then asked some questions about Dr. Francisco Colón Rivera's contract as a resident at the Hospital.[4] More specifically, Dr. Valentín was asked about the nature of Dr. Colón's contract and she was shown Defendant's **Exhibit C**, entitled "Postgraduate physician in training agreement. Internship – Medical Residency." (Docket No. 100-3 at 17). The contract depicted at **Exhibit C** is between the Puerto Rico Department of Health and Dr. Colón.[5] Dr. Valentín explained that Dr. Colón was a resident of the "Ob-Gyn" program at the Hospital and that he began his residency with the Hospital in 2014.

---

[4] Dr. Francisco Colón Rivera would be the second witness called by the Defendants.

[5] Dr. Valentín explained that the medical residents are technically employees of the Puerto Rico Department of Health, being required to sign a contract with such agency rather than the Hospital. The Hospital, in turn, provides the faculty, rest areas, educational space, space for meetings, conference rooms, trainings, and tools for the residents' evaluations. This is part of the RAMC's legal and functioning scheme.

Dr. Valentín further explained that because the Hospital is a teaching hospital, every patient admitted to the Hospital or treated in the emergency room is informed that they will, or may, encounter medical residents during their treatment. Indeed, she said that upon admission, the patient's consent is sought by means of a document entitled "Consent for Treatment," that is provided to each patient. The Consent for Treatment form was admitted as Defendant's **Exhibit D**. (Docket No. 100-4 at 2). Dr. Valentín also testified that the document is used for *all* patients and is made part of the patient's medical record. The form specifies, among other things, that:

> By reading this document, I am aware that Hospital San Lucas has academic affiliation and collaboration agreements with educational institutions and that there is a possibility that there will be physicians, nursing staff, and other healthcare professionals in training that intervene in my healthcare. I agree to these professionals providing me with care, under the corresponding supervision.

**Exhibit D**. (Docket No. 100-4 at 2). Dr. Valentín clarified that not every patient who is admitted to the Hospital comes into contact with its teaching program or its members, but all patients are made aware of the Hospital's teaching capacity and the possibility of receiving treatment by residents or medical students. In some cases, Dr. Valentín testified, the patient or his or her pathology or treatment can be used in the academic process for the students at the medical school.

Dr. Valentín was then asked to discuss the specific "Consent for Treatment" form signed by Mónica Pérez García in this case. The form signed by Ms. Pérez García specifically indicated that she, "with full knowledge of the fact that [she is] suffering from a condition that requires diagnosis and medical and/or surgical treatment, hereby voluntary consent" to be treated by "physicians, nursing staff, and other healthcare professionals in training" that intervene in her medical care. *See, id.* Dr. Valentín explained that the patient consented to having medical residents participate in her medical care under the supervision of their corresponding supervisors, which in this case, was Dr. Concepción.

Dr. Valentín was then shown a couple of pages from Ms. Pérez García's medical record at the Hospital. **Exhibit E**. (Docket No. 100-5). More specifically, Dr. Valentín identified one document as the "Newborn Identification" form for Mónica Pérez García and her baby boy born on April 30, 2015. She also identified the "Physician's Delivery Note," and was asked questions about it too. She testified that, based on the signatures found on those documents, she could tell that the delivery of Ms. Pérez García's baby was performed by Dr. Colón, a resident at the time, and by Dr. Concepción, Dr. Colón's attending physician. She pointed out that the series of numbers ending with the letter "R" that appear after the signatures stands for the physician's medical license number and the "R" at the end means that the physician is a resident. Dr. Valentín testified that based on these things, she had no doubt that the patient was seen and treated by a resident and a member of the teaching faculty of the Hospital.

Dr. Valentín also offered general testimony with respect to the history of the Residency Program at the Hospital. More specifically, she explained the significance and importance of having all the Hospital's residency programs approved by the Accreditation Council for Graduate Medical Education ("ACGME"). According to Dr. Valentín, ACGME approval means that the Hospital's residency programs have maintained certain high standards, including very specific standards pertaining to the supervision of each level of resident. Under those standards, an attending physician is permitted to offer direct and indirect supervision and oversight based on the milestones met by each individual resident. Before a resident can move onto the next milestone, they must attain certain grades on the objectives established by the Residency Program.

On cross-examination, the witness explained that the birth which gave rise to the present cause of action, took place in 2015. During that time, Dr. Valentín was not the Director of the Graduate Program of Medical Education, but rather was part of the Residency Program in Internal Medicine at the Hospital. Dr. Valentín clarified that she played no role in contracting Dr. Concepción to work at the Hospital. Dr. Valentín was asked whether all faculty members have contracts, to wit she

answered, "yes." When asked about Dr. Concepción's contract specifically, she said that all faculty members have contracts, and that Dr. Concepción was no exception. She further recalled that Dr. Concepción signed a contract just last year and that she has personally seen that contract. When pressed more about Dr. Concepción's contract for the year 2015, Dr. Valentín said that she does not recall specifically whether Dr. Concepción had a contract for that year, but she explained that the official document used by the Hospital for purposes of determining faculty status is the academic appointment issued by the University, which appointment Dr. Concepción has had continuously since 2006.

In response to questions regarding Dr. Concepción's private patients who are treated at the Hospital, and her overall relationship with the institution, Dr. Valentín explained that while Dr. Concepción does have privileges at the Hospital, she is also part of the Hospital's voluntary faculty. In Dr. Concepción's case, because she is a member of the voluntary faculty, *all* her patients are considered part of the academic program. Dr. Valentín repeated that the Hospital is an RAMC facility. Since it is a private hospital, she explained that to ensure it receives the required number of patients to become part of the educational process, the Hospital contracts doctors to have their private patients come to the Hospital for treatment. And indeed, that is the case with Dr. Concepción's patients.

Regarding remuneration, Dr. Valentín explained that voluntary faculty members, like Dr. Concepción, do not get paid by the Hospital for their teaching roles. Instead, only core faculty members get paid for teaching. Dr. Valentín explained that the incentive for voluntary faculty members to teach is that, by teaching, they become an appointed member of the faculty of a teaching hospital, which, in turn, gives them the same protections afforded the Hospital under the RAMC Act, namely a cap on potential damages for medical malpractice. She also explained that, in addition to the cap on damages, the Hospital also benefits from the relationship because the voluntary faculty members bring their private patients to the Hospital, which in turn contributes even further to the medical student's learning process.

Dr. Valentín clarified that voluntary faculty members are physicians in private practice who are certified to become faculty members in a teaching hospital by way of an academic appointment from a duly accredited medical school. In Dr. Concepción's case, she "has always been a member of the voluntary faculty" at the Hospital, "has always been a part of the Residency Program" and has always allowed for her patients to be part of the Residency Program. And Dr. Concepción's patient, [Mónica Pérez García], was no exception. "She was part of the academic education process of the residency with Dr. Concepción."

After concluding her questioning by counsel, the Court took the opportunity to ask Dr. Valentín a few questions. In response, Dr. Valentín clarified that, in this case, Dr. Concepción does have privileges at the Hospital, but she is *also* a faculty member. As such, she would clearly be covered by the statutory cap on damages under the RAMC Act because irrespective of whether or not she has privileges at the Hospital, she has *always* been a member of the voluntary faculty and works regularly with the residents as part of the Hospital's educational program. Dr. Valentín stressed, moreover, that there is no indication that Dr. Concepción has resigned from her role as a voluntary faculty member, and, therefore, she remains as such.

Finally, although it is no longer an issue in dispute in this case, Dr. Valentín testified that the Hospital's residency programs, including the supervision structure, complies with ACGME national accreditation requirements.

Wrapping up with the first witness, Dr. Valentín's testimony was clear, credible, and thorough. She spoke confidently and had a clear command of the information to which she testified. Although the Court is in no way bound by Dr. Valentín's interpretations of the law, her understanding of how the RAMC program operates is not unfounded. For those reasons, the Court fully credits her uncontested testimony. The Court recognizes that the witness has no direct stake in the outcome of this case but might be perceived to have a tangential stake in the outcome of this case to the extent that it confirms or undermines her understanding of how the RAMC statutory cap on damages operates with respect to the medical and

teaching entities with which she is affiliated. *See, Ortiz-Santiago v. Hosp. Episcopal San Lucas, Inc.,* (D.P.R. Aug. 20, 2018).

### B. Dr. Francisco Colón Rivera

Dr. Francisco Colón Rivera ("Dr. Colón") has a specialty in "Ob-Gyn" and is currently employed by Med Centro Ponce. Dr. Colón participated in the Residency Program at the Hospital in "Ob-Gyn" from 2014 to 2018. He is now a voluntary member of the teaching faculty at the Hospital and has privileges at the institution. Dr. Colón offered general testimony as to how the Residency Program works at the Hospital. He explained that Dr. Concepción was one of his attending physicians from 2014 to 2018, during which time he participated in the "Ob-Gyn" Residency Program. He also stated that he treated patients that came to the Hospital for "Ob-Gyn" treatment together with Dr. Concepción. He was asked what kind of relationship he had with Dr. Concepción, and he answered that he had a teaching relationship with her, just like the rest of the residents who are part of the "Ob-Gyn" program.

Dr. Colón was shown his contract for attending the Residency Program at the Hospital. **Exhibit C**. (Docket No. 100-3). He explained that he was under the supervision of Dr. Concepción and recalls tending to her patients while under her supervision. Dr. Colón was also shown documents from the medical record of Mónica Pérez García. *See,* **Exhibit E**. (Docket No. 100-5). Dr. Colón identified his name and signature on pages 4, 5, 7, and 10 of Ms. Pérez García's medical record. He explained that the fact that his signature appears on these pages means that he treated and was present with the patient at that time. Dr. Colón made clear that he treated Ms. Mónica Pérez García during the relevant timeframe alleged in the Complaint, namely, 2015. He further testified that he was present during, and participated in, the delivery of her baby boy. He stated, however, that other residents, like Dr. Del Pilar, also treated Ms. Pérez García. When asked who was the faculty member that supervised him with respect to the patient Mónica Pérez García on April 30, 2015, he answered "Dr. Concepción."

On cross-examination, Dr. Colón offered additional testimony about how the Residency Program worked at the Hospital and his personal experience working under the Program. With respect to the present action, he said that the delivery of Ms. Pérez García's baby took place during the first year of his residency, that is in the year 2015. Dr. Colón was then asked specific questions about his relationship with Dr. Concepción, to wit, he said that he occasionally "bump[ed]" into her at the Hospital (because they both work there). He also clarified that he does not consult with Dr. Concepción, does not ask for patient referrals from her, nor does he "cover[]" for her. Instead, he said he does not have a close personal relationship with Dr. Concepción, but rather a relationship best described as "a typical one of a resident with his attending physician." Dr. Colón was also asked if he remembers Mónica Pérez García as a patient, to wit he said, "no," he did not. He was then asked if he remembered anything about the patient's treatment. In response, he said that upon reviewing the patient's medical record, he remembers that she had a four-degree laceration but otherwise, had no independent recollection of the patient.

Dr. Colón was credible. His demeanor was calm, and he spoke confidently and clearly. He also had a clear command of the information about which he testified. The Court therefore fully credits his uncontested testimony.

### C.  **Dr. Maryrose Concepción-Girón**

Co-defendant Dr. Concepción is a board-certified medical doctor in Puerto Rico with a specialty in "Ob-Gyn." She testified that she has been part of the Ponce School of Medicine's faculty since 2006. She also confirmed that she is a member of the voluntary faculty working at the Hospital and attested that she currently has students from the University "rotating" in her private office. Dr. Concepción attested that she is a voluntary faculty member of the Hospital and has had privileges in the "Ob-Gyn" department since the year 2001. She verified that in 2006, she became a member of the Hospital's voluntary faculty and has since then continued to serve in that capacity without interruption.

*Pérez-Pérez et al v. Hospital Episcopal San Lucas, Inc. et al.*   Page 12
Civ. No. 18-1014 (JAG-MDM)

Dr. Concepción explained that she is part of the teaching staff for third-year residents at the Hospital and serves as a proctor for the teaching staff for all four years of the Residency Program. Dr. Concepción testified that she generally supervises various medical residents at one time and that she supervises everything they do in the program. She testified that she directly evaluates her patients with the residents and that more experienced residents may visit patients without her direct supervision, but, in those cases, they must still consult with her. She further explained that, in addition to teaching proper medical care, she teaches the residents how to complete paperwork, how to take notes, and how to speak with their patients, among other things.

Dr. Concepción was shown **Exhibit B**, known as the certification of her appointment as a faculty member of the Ponce School of Medicine. (Docket No. 100-2 at 2). She confirmed that this document constitutes her appointment as a faculty member in the Ob-Gyn Department at the Hospital. She also confirmed the accuracy of the information contained in the certification at **Exhibit B**.

Dr. Concepción was then asked questions with respect to the patient's medical record at the Hospital. She was shown **Exhibit E** and asked to identify it. She said it was the "Delivery Note" for the patient, Mónica Pérez García, dated April 30, 2015. She explained the contents of the document and said it is part of the patient's medical record at the Hospital. She also identified Mónica Pérez García as having been her patient in the year 2015.

Dr. Concepción testified that in her private office, when she treats her patients for prenatal care, she always tells them that she is part of the University's faculty and that she works with residents in training at the Hospital. She also confirmed that she explains to her patients that residents in training might see and treat them. She also said that she sometimes brings her residents to her private office to meet her patients. When asked about the delivery in this particular case, she said that Dr. Colón assisted her, and that Dr. Del Pilar was also present in the delivery room to observe the process and to write the delivery note. She further confirmed that both Dr. Colón and Dr. Del Pilar were part of the RAMC program at that time.

On cross-examination, counsel for the Plaintiffs asked her what it means to have privileges at the Hospital, to which she responded by saying that it gives her the privilege of delivering a child in the Hospital without any supervision. Counsel then confronted Dr. Concepción with certain pages from Ms. Pérez García's medical record, specifically, page 7 of **Exhibit E**. She was asked if she recognized the signatures on the document, to wit, she said, "yes," and proceeded to identify Dr. Del Pilar's signature and her signature in two places on the document.[6]

She was then asked about **Exhibit B**, her certification as a faculty member by the Ponce School of Medicine. (Docket No. 100-2 at 2). She explained that that document is a certification from the Ponce School of Medicine that as of September 14, 2006, she became a faculty instructor of the University in the "Ob-Gyn" Department. The document further certifies that Dr. Concepción is an attending physician who actively participates in the teaching of residents in the "Ob-Gyn" Residency Program at the Hospital as a "volunteer faculty instructor," as defined by the accrediting agency for residency programs "ACGME." Counsel then asked Dr. Concepción if she had requested that certification (Exhibit B) as a result of the present litigation having been filed, but she categorically denied having done so.

Counsel then questioned why her appointment with the Hospital as a voluntary faculty member was dated February 8, 2018, if her appointment was made back in 2006. Plaintiff's counsel further insinuated, without any direct evidence, that there *must* be another contract with the Hospital that Dr. Concepción is withholding.[7] In response to such accusation, Dr. Concepción answered that she signs many

---

[6] Dr. Concepción explained during her testimony that even though a record may contain only a resident's signature, it does not necessarily mean that she was not present with the resident at the time the resident visited the patient. She testified that her residents cannot sign notes in the record unless she (or another attending physician) is present with the resident or the resident consults with her.

[7] The Court notes that this line of questioning (or commentary) by Plaintiffs' counsel pertains to the highly contested issue of Dr. Concepción's contract(s) or appointment as a voluntary faculty member of the Hospital. It is Plaintiffs' counsel's belief that if Dr. Concepción was appointed as voluntary faculty on September 1, 2006, there *should* be a contract with the Hospital contemporaneous to that date. Counsel however said that he has requested that document, but it has never been produced. During the hearing, counsel for the Plaintiff implied that the certification dated February 18, 2018, was potentially prepared by the Hospital as a result of this litigation but he offered no evidence to support such contention.

contracts, some of them electronically, and that she tries to keep her files updated. She further specified that she has looked for the 2006 contract, without success, and doesn't know where it could be. Counsel then asked whether, in addition to the 2018 certification, the government or any other entity, must provide her with any other authorization to serve as a voluntary faculty member, to which she answered "no." Dr. Concepción was then asked whether she has a contract with the Hospital to serve as a continuing voluntary faculty, to which she answered in the affirmative. She specified that she signs a contract with the Hospital every year. She further explained that sometimes she signs the contract digitally and does not have to sign any additional document with a government agency or any other entity.

The Court finds Dr. Concepción to be a credible witness. She spoke confidently and clearly and was not rattled by Plaintiffs' counsel's cross examination. Nor did she become defensive in response to his questioning. Dr. Concepción had a clear command of the information to which she testified. She also confidently indicated when she did not know the answer to a particular question. Although she has a stake in the outcome of this case because she is one of the co-defendants, the Court nevertheless credits her undisputed testimony.

### III.   Analysis

The Court begins by noting that the testimony offered by the witnesses and the documentary evidence presented during the hearing was *not* controverted by the Plaintiffs. The Court also reiterates that Plaintiffs failed to present any evidence to support their position that Dr. Concepción somehow is *not* a member of the voluntary faculty at the Hospital and does *not* have a teaching faculty role at the Hospital. Below are the Court's findings based on all the evidence presented.

The uncontroverted evidence demonstrates that, during the relevant period of time alleged in the Complaint, Dr. Concepción was a member of the teaching faculty in the "Ob-Gyn" Department at the Ponce School of Medicine, that she participated in the Residency Program at the Hospital in the "Ob-Gyn" Department, and that she was and has been a member of the Hospital's voluntary faculty since September 1, 2006, without interruption. It is also uncontroverted that at all relevant

periods of time alleged in the Complaint, Dr. Concepción worked with medical students and residents of the "Ob-Gyn" Residency Program as part of the Hospital's teaching faculty.

It is also uncontroverted that Dr. Concepción often brought her private patients for treatment at the Hospital where she is a voluntary faculty member and where she has privileges. In addition, Dr. Concepción rendered medical care to the patient Mónica Pérez García, together with medical residents who acted under her supervision, as part of her teaching duties during all relevant periods of time alleged in the Complaint. In fact, while acting as a teaching physician of the Hospital, Dr. Concepción delivered Mónica Pérez García's baby in 2015, together with two of the residents she supervised, Dr. Colón and Dr. Del Pilar.

With respect to Plaintiffs' complaint that no contract was ever produced dating back to 2006 between Dr. Concepción and the Hospital appointing her as voluntary faculty member, the Court finds such complaint to be a red herring. Irrespective of whether such contract ever existed, the Court nevertheless finds that the record is replete with other sufficiently credible evidence to find that, at all times relevant to the Complaint, Dr. Concepción was a voluntary faculty member of the Hospital; such appointment having begun on September 1, 2006 and having continued without interruption until the date of the hearing in this case, May 26, 2022.

To start, the record contains a valid certification from the Ponce School of Medicine, dated September 14, 2006, which states, in relevant part, that:

> Regarding the recommendation of the Director of the Ob-Gyn Department, Dr. Joaquín Laboy; the Dean of Academic Affairs, Dr. Olga Rodríguez de Arzola; and R. Raúl Armstrong, Dean of Clinical Affairs and Faculty, I am pleased to grant your appointment to the *position of Clinical Instructor in the Ob-Gyn Department*.
>
> *Your appointment will be effective as of September 1, 2006.*
>
> On behalf of our faculty and students, please receive a warm welcome to the Ponce School of Medicine.

**Exhibit E**. (Docket No. 100-2 at 2). The certification is signed by Luisa I. Alvarado, then President and Dean of the Ponce School of Medicine. In addition to that certification of her appointment, which is self-evident, the uncontroverted documentary evidence shows that Dr. Concepción became a member of the voluntary faculty of the Hospital in 2006. More specifically, the defendants offered into evidence the following certification.

> *We hereby certify that the attending physician, Dr. Maryrose Concepción, actively participates in the teaching of the residents in training and medical students in the Residency Program in Obstetrics and Gynecology of the Ponce School of Medicine/HESL[8] Consortium*, program number 2204221326.
>
> *Since September 1, 2006, her participation in the Residency Program has been in the form of a "Volunteer Faculty Instructor," as defined by the accrediting agency for Residency Programs, "ACGME."*

**Exhibit E**. (Docket No. 100-2 at 3). This certification is dated February 8, 2018, and is signed by Joaquín Laboy, M.D., Director of the Residency Program in "Ob-Gyn" for the Hospital and the Ponce School of Medicine consortium. This document is also self-evident. And, again, its admission into evidence was not objected to, nor were its contents disputed by the Plaintiffs.

      The Court additionally notes that, based on the undisputed evidence presented during the hearing, the structure of the Residency Program is such that a medical resident, by sheer operation of being a resident, offers treatment in the exercise of his academic formation in conjunction with the Hospital's staff and his or her attending physician. Here, the credible and uncontroverted testimonial evidence was that Dr. Concepción, as a member of the Ob-Gyn Department's voluntary faculty, supervised medical residents, like Dr. Colón, who also specialized in "Ob-Gyn" and that she has done so from the year 2006 to the present. Said timeframe covering completely the time period of the acts alleged in the Complaint.

---

[8] HESL stands for Hospital Episcopal San Lucas, Inc.

Based on the foregoing, the Court finds that the evidence presented during the evidentiary hearing, which was uncontroverted, showed that, at all times relevant to the Complaint, and at least as far back as September 1, 2006, Dr. Concepción was a member of the voluntary faculty at the Hospital.

### IV.    Conclusion

Pursuant to the uncontroverted testimonial evidence heard, and the uncontroverted documentary evidence offered during the evidentiary hearing, the Court **RECOMMENDS** the adoption of its factual finding that Dr. Concepción was a member of the teaching faculty at the Hospital at all times relevant to the Complaint at issue in this case.

**IT IS SO RECOMMENDED**.

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 16th day of August 2022.

MARSHAL D. MORGAN
United States Magistrate Judge